SHENANDOAH ECOSYSTEMS DEFENSE GROUP; Heartwood; Preserve Appalachian Wilderness; The Wilderness Society; Sherman Banford; Steven Krichbaum, and Christina Wulf, Plaintiffs,

v.

UNITED STATES FOREST SERVICE; Elizabeth Estill, Regional Forester; William Damon, Forest Supervisor, and Patricia Egan, District Ranger, Defendants.

No. Civ.A. 98–0388–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

Aug. 17, 1998.

Ray Vaughan, Montgomery, AL, Matthew Dean Pethybridge, Blacksburg, VA, for Plaintiffs.

Robert P. Crouch, Jr., U.S. Atty., Roanoke, VA, John F. Corcoran, U.S. Attorney's Office, Roanoke, VA, Steven C. Bott, Office of General Counsel, U.S Dept. of Agriculture, Atlanta, GA, Lois J. Schiffer, U.S. Dept. of Justice, Environmental Enforcement Section, Environmental & Natural Resources Div., Washington, DC, Stephanie M. Parent, U.S. Dept. of Justice, Environmental & Natural Resources, Washington, DC, for Defendants.

## MEMORANDUM OPINION

TURK, District Judge.

This matter is before the Court on the parties' cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs seek to enjoin timber harvesting decisions by defendants in three regions located in the Jefferson National Forest ("the Forest") on a number of issues, primarily on the basis that defendants did not consider site specific data or the cumulative impacts of the harvestings in accordance with the National Environmental Policy Act, (NEPA) 42 U.S.C. §§ 4321 *et seq.* and the National Forest Management Act (NFMA), 16 U.S.C. § 1604. Defendants claim they are entitled to summary judgment because they did consider the cumulative im-

pacts of the logging projects and because plaintiffs' interpretations of the legal standards generally exceed that required by the laws, regulations and the courts.

This matter was originally filed in the United States District Court for the Northern District of Georgia on plaintiffs' motion for a Temporary Restraining Order ("TRO") to enjoin defendants' harvesting certain portions of the Forest. The matter was subsequently transferred to this Court which heard plaintiffs' motion for a preliminary injunction on June 11, 1998. At that hearing, the Court suggested both parties submit motions for summary judgment. After a review of the record, the parties' arguments and the applicable laws, the Court will grant defendants' motion for summary judgment.

## I. STATEMENT OF FACTS

The present action centers around three federally-subsidized logging projects by the United States Forest Service in the Jefferson National Forest. The Forest Service administers the Forest under the direction established by the Forest's Land and Resource Management Plan ("the Forest Plan"). In order to implement the Forest Plan to meet the Desired Future Condition for the Forest, the Forest Service, through the District Ranger, made three separate decisions to authorize these projects to be implemented in her district. The three projects at issue are the Arney Groups Project, the Terrapin Mountain Project and the Wilson Mountain Project.

The Arney Groups Projects cover approximately 15,274 acres. Within this area, the Forest Service approved silvicultural treatment of 224 acres, less than 2% of the total project area. The Wilson Mountain Project covers approximately 5,750 acres. The Forest Service approved silvicultural treatment on 196 acres in this area, approximately 3.4% of the total project area. The Terrapin Mountain Project covers approximately 3,513 acres. Within this area, the Forest Service approved silvicultural treatment on 110 acres, approximately 3% of the total project area. Thus, only approximately 600 acres of the Forest are affected by the Forest Service's decision. The stated purpose of the proposed actions is to provide wood fiber for

society while improving the health and vigor of the trees within the affected stands to provide a non-declining sustained yield of forest products to contribute to implementation of the Forest Plan.

Each proposed action was subject to a separate Environmental Assessment ("EA") in which an interdisciplinary team of Forest Service employees, aided by public comment, considered the proposed action and possible alternatives. The District Ranger reviewed the EA for each proposal, which plaintiffs subsequently appealed. Thereafter, the District Ranger issued a revised EA and a Finding of No Significant Impact ("FONSI") on the affected areas of the Forest, which was the final administrative action for each project.

Because the FONSI for the Arney Groups Project occurred in September 1997 compared to January 8, 1998 for the other two projects, the Forest Service had already proceeded to let for bids the timber harvesting approved in that project. The plaintiffs subsequently filed the present action to enjoin the harvesting of the Arney Groups Project. Two of the purchasers of the timber thereafter agreed to postpone timber operations in the Arney Groups until the case could be heard on the merits. However, for business reasons, those purchasers could not postpone operations any longer than two weeks after the plaintiffs filed their motion for a TRO on May 14, 1998. On May 29, 1998, the District Court for the Northern District of Georgia heard oral argument on defendants' motion to transfer and plaintiffs' motion for a TRO. The action was subsequently transferred to this Court to hear plaintiffs' motion for a preliminary injunction. At that hearing, the Court suggested the parties submit motions for summary judgment.

## II. MOTIONS FOR SUMMARY JUDGMENT

Upon motion for summary judgment, the Court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355 (4th Cir.1985). Summary judgment is appropriate if the pleadings, responses to discovery, and the record

reveal that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). However, the mere "existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. ANALYSIS

Plaintiffs base their motion for summary judgment on the following claims: (1) defendants failed to identify and consider cumulative impacts to key forest resources and failed to prepare an environmental impact statement as required by federal law; (2) defendants' decisions were arbitrary and capricious due to the failure to consider impacts to a rare species, the Peaks of Otter Salamander; (3) defendants failed to properly identify and consider roadless areas and disclose the effects of the proposed actions on them; and (4) defendants failed to consider an adequate range of alternatives to the proposed projects.

Defendants assert that plaintiffs' argument is without merit because the Forest Service properly considered cumulative impacts to the Forest and to native wildlife, acted in accordance with federal guidelines concerning maintenance of data and exclusion of the areas from the Forest's roadless inventory, and otherwise considered alternatives to the timber harvesting. Defendants assert that assessments of which areas should be included in its roadless inventory is a preliminary step in its decision making process and thus not final agency action for purposes of judicial review.

■ The Administrative Procedure Act ("APA"), 5 U.S.C. § 706 sets forth the procedural standard for judicial review of federal agency actions. Section 706 provides that when informal action is challenged, "[t]he reviewing court shall ... set aside agency action ... found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or if it fails to meet certain statutory, procedural or constitutional requirements. *Id.* However, a court may not "substitute its own judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). "The agency's actions are 'presumed to be lawful and correct' and the court must give 'due deference to the agency's expertise and judgment.' " *Fener v. Hunt*, 971 F.Supp. 1025, 1031 (W.D.Va.1997) (quoting *Sierra Club v. Robertson*, 810 F.Supp. 1021, 1025 (W.D.Ark.1992)).

Further, the APA limits the scope of a judicial review to the administrative record before the court at the time of decision-making. 5 U.S.C. § 706; *Krichbaum v. U.S. Forest Service*, 973 F.Supp. 585, 589–90 (W.D.Va.1997). Therefore, for plaintiffs to prevail in this action, it must be shown that defendants acted in an arbitrary and capricious manner in their decisions based on a review of the administrative record. After a review of the administrative record, the Court does not find that plaintiffs are entitled to relief on their claims.

### A. Failure to Consider Cumulative Impacts

Plaintiffs first argue that although defendants may have considered the impacts each project by itself would have on the Forest, defendants failed to consider the cumulative impacts the logging projects would have on the Forest. For example, plaintiffs assert that major parts of the Arney Groups and Wilson Mountain projects are in the James River Watershed, but neither EA mentions the other project and neither EA discusses the cumulative water quality impacts from either sale added to the other. Plaintiffs also assert that defendants failed to prepare an Environmental Impact Statement ("EIS") in accordance with federal law.

■ The NEPA requires federal agencies to consider the cumulative impacts on the environment of related proposed federal actions. In *Kleppe v. Sierra Club*, 427 U.S. 390, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976), the Supreme Court stated that "when several proposals for ... related actions that will have cumulative or synergistic environmental impacts upon a region are pending concurrently before an agency, the environmental consequences must be considered together."

*Id.* at 410, 96 S.Ct. 2718. However, the duty to discuss cumulative impacts "requires the weighing of a number of relevant factors, including the extent of the interrelationship among proposed actions and practical considerations of feasibility." *Id.* at 412.

■ Based on a review of the administrative record, the Court finds that the Forest Service properly considered the cumulative impacts of the three logging projects. The Forest Service has taken a hard look at the cumulative impacts of the logging projects and examined the potential environmental effects for each of the alternatives of the proposed action, including direct and indirect effects. In addition, the Forest Service divided its analysis of effects into ecological, social, and economic components. The Forest Service also determined the scope of its review for each topic and specific species independently according to a reasoned analysis of the potential impact on the subject. This scope varied in size between subjects.

Moreover, for any proposal for action, the Forest Service must determine the appropriate spatial and temporal bounds for each effect and resource area. The record shows that the Forest Service analyzed the impact on soil water and aquatic organisms and native wildlife, and considered the effect each project would have on the environment. The record demonstrates that the Forest Service considered these effects in great detail. Because it cannot be said that the Forest Service failed to consider cumulative impacts, plaintiffs are not entitled to relief on this claim.

■ With regard to plaintiffs' claim that the Forest Service was arbitrary and capricious in not preparing an EIS, the Court does not find that plaintiffs are entitled to relief on this claim. The focus and determination as to whether an agency must prepare an EA or EIS is the significance of the impacts that the proposed action will have on quality of the human environment. *See* 40 C.F.R. §§ 1501.3 and 1502.1 As long as the environmental assessment and underlying record demonstrate that the agency took the requisite hard look at the possible environmental impacts, the agency has not acted in an arbitrary or capricious manner. *Balti-*

*more Gas & Elec. Co. v. NRDC,* 462 U.S. 87, 87–98, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983). A hard look is accomplished if it appears that the agency, based on the administrative record, made a reasoned valuation of the facts. An agency's decision as to the significance or lack of significance of information is entitled to substantial deference. *Sabine River Authority v. U.S. Department of Interior,* 951 F.2d 669, 677 (5th Cir.1992). A party challenging such an action can only prevail if it can demonstrate such a determination had no rational relationship to the facts presented in the administrative record—that the Forest Service had no reasoned basis for issuing a Finding of No Significant Impact.

■ Plaintiffs' claim that the Forest Service's issuance of a FONSI is arbitrary and capricious appears to be based upon plaintiffs' view of the magnitude of the projects. Plaintiffs rely on a number of cases where the court has found that an EA was inadequate. However, these cases were of substantially greater magnitude than the projects at issue in the present case. *See National Audubon Society v. Hoffman,* 917 F.Supp. 280 (D.Vt.1995) (impacting 1,300 acres, 300 of which were to be clearcut). However, neither the Wilson Mountain nor Terrapin Mountain Projects involve clear cutting. The Court is unable to find any evidence based on a review of the administrative record that the Forest Service acted capriciously in not issuing an EIS.

### B. Failure to Consider the Peaks of Otter Salamander

Plaintiffs allege that sites for the Terrapin Mountain Project are within the range of the Peaks of Otter Salamander ("POS") and will impact that species. Therefore, plaintiffs allege that because the action may result in destruction of ecologically critical areas for the POS, an EIS is required and the Forest Service is in violation of the NFMA.

The Court finds plaintiffs' claim to be without merit. The Forest Service signed a Conservation Agreement based on a Habitat Conservation Assessment ("HCA"). The HCA found that while logging may impact

the POS, it could be conducted without significantly lowering salamander abundance. The HCA provided guidelines by which timber harvesting could occur while protecting POS populations. Moreover, the Forest Service conducted intensive surveys of known POS locations and conducted surveys to determine the range and extent of the POS' habitat. The Forest Service then inventoried this data.

■ The record establishes that the Terrapin Project can proceed without significantly decreasing the POS. The Court finds that the Forest Service has complied with its duty under the NFMA to inventory the POS and to disclose the impacts to it under the NEPA in deciding to proceed with the Terrapin Mountain Project. Thus, plaintiffs are not entitled to relief on this claim.

C.  Failure to Include the Project Areas in the Forest's Roadless Inventory

Plaintiffs allege that defendants' failure to include the three project areas in the Forest's Roadless Inventory was arbitrary and capricious. Plaintiffs argue that the projects areas are roadless areas and it was improper for these areas not to be included in the Forest's Service's Roadless Inventory.

■ The Court finds that plaintiffs are not entitled to relief on this claim because the Forest Service's decision to omit the project areas from its Roadless Inventory was not final agency action. Section 704 of the APA provides relief for "final agency actions for which there is no other adequate remedy in a court." 5 U.S.C. § 704. In *Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997), the United States Supreme Court reiterated that in order to demonstrate final agency action, it must be shown that the action marked the consummation of the agency's decision making process. The action must not be tentative or interlocutory. In addition, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow. *Id.* (Internal quotations and citations omitted).

In the present case, the Forest Service's roadless inventory does not meet these crite-ria. The Forest Service has not completed its decision-making process nor has it made any decisions with binding legal consequences. The Forest Service started the process to revise the Jefferson National Forest Plan by publishing a notice of intent to prepare an environmental impact statement but did not publish a draft environmental impact statement.

Moreover, Congress has provided that potential wilderness areas will not be afforded special protection based solely on their status as potential wilderness areas until they are recommended for wilderness designation in a Final Revised Forest Plan. Pub.L. No. 98–586, § 5(b)(4), 98 stat. 3107. Accordingly, no legal consequences will flow from an area's inclusion or exclusion from a preliminary roadless inventory. Only after the plan revision process has been completed will those areas recommended for wildernesses be protected as wilderness areas. Thus, until the forest planning process results in a Revised Forest Plan that contains the wilderness proposal or recommendation, non-wilderness areas will not be protected as wilderness regardless of whether they are classified as roadless or roaded. Because no legal consequences will flow from the compilation of the preliminary roadless inventory, the plan revision process is ongoing, and no wilderness recommendations have been made, the omission of the project areas from the Forest's roadless inventory is not final agency action subject to review under the APA.

Even assuming that the Forest Service's failure to include the projects in the Forests' roadless inventory was final agency action, plaintiffs would not be entitled to relief because the Forest Service's decision was not arbitrary or capricious. With respect to the James River Face Wilderness, the record establishes that the Forest Service reviewed the suggested addition to this area and determined that it did not meet the criteria for inclusion into the roadless inventory because the surrounding sides of this area had received extensive timber harvest activity over the past ten years, and was otherwise in heavy private and industrial development. Based on these reasons, the Forest Service's decision not to include the proposed addition

in the roadless inventory was not arbitrary or capricious.

With respect to the Terrapin Mountain Project, the record establishes that the Forest Service reviewed the proposed areas and found that the areas were very small and not self contained ecosystems. In addition, the Forest Service determined that the Terrapin Mountain area was pinched into three separate areas by state and Forest access roads that could not be closed or included within the roadless boundary. Based on these considerations, the Court does not find that the Forest Service's decision was arbitrary or capricious.

With respect to the Wilson Mountain area, the Forest Service determined that this area did not qualify for inclusion into the roadless inventory because it did not contain a semi-primitive core, was relatively narrow, there was no buffer from outside sights and sounds, and it was adjacent to developed recreation areas. The Forest Service found that the Wilson Mountain area would not be included in the roadless inventory because it did not meet the criteria for a natural untrammeled appearance, was not conducive to the perpetuation of wilderness values, was not a self-contained ecosystem and not contiguous to existing wilderness or roadless areas.

■ Based on the foregoing considerations, it cannot be said that the Forest Service's decision not to include the aforementioned areas into its roadless inventory was arbitrary or capricious. The decisions were based upon site-specific data and information. The Forest Service reasonably concluded that the areas did not meet the criteria for inclusion into its roadless inventory. Accordingly, plaintiffs are not entitled to relief on this claim.

### D. Failure to Consider Alternatives

■ Finally, plaintiffs allege that the Forest Service failed to consider alternatives based on the nature and scope of the proposed action. The Forest Service only published an EA. The Council on Environmental Quality ("CEQ") regulations require that the scope of an EIS is to consider alternatives of no action, other reasonable courses of action, and mitigation measures. 40 C.F.R. § 1508.25(b). Under the NEPA, an EIS need only set forth those alternatives "sufficient to permit a reasoned choice." "An agency's consideration of alternatives is adequate if it considers an appropriate range of alternatives, even if it does not consider every available alternative." *Headwaters, Inc., v. Bureau of Land Management,* 914 F.2d 1174, 1180–81 (9th Cir.1990). The agency is not required to consider remote or speculative alternatives that are inconsistent with the goals of the Forest Plan. *Krichbaum v. U.S. Forest Service,* 973 F.Supp. 585, 593–94.

■ After review of the record, the Court finds that defendants properly considered alternatives to the proposed actions. The record establishes that the Forest Service identified the Desired Future Condition of the areas, developed a range of alternatives in response to the public issues and concerns, and considered the no-action and mitigation alternatives. In the Arney Groups Project, the Forest Service evaluated in detail five separate alternatives, including the no action alternative and extensive mitigation measures and eliminated five other alternatives from further detailed consideration. For the Terrapin Mountain Project, the Forest Service evaluated five separate alternatives, and eliminated five from detailed study. With respect to the Wilson Mountain Project, the Forest Service considered five alternatives in detail and eliminated six from detailed review. .

Plaintiffs also make the following arguments: (1) the range of alternatives considered by the Forest Service was not broad enough because all alternatives provide for the same amounts of timber; (2) the Forest Service failed to evaluate an uneven aged management alternative; and (3) the Forest Service should have considered other alternatives to reduce road density, and a roadless preservation alternative.

■ The Court finds plaintiffs' first argument without merit. For the Arney Groups Project, the five alternatives considered in detail range in area from zero to 362 acres. The alternatives provide for a maximum regeneration of zero for alternative one (no

action) and 40, 362, 210 and 32 acres for each for the other alternatives respectively. The Terrapin Project range (0, 252, 110, 150, and 252) and the Wilson Project ranges (0, 222, 196, 164, 35). The Court finds these ranges reasonably broad. Plaintiffs are not entitled to relief on this claim.

With respect to plaintiffs' second argument, the Court finds that the Forest Service evaluated uneven-aged management alternatives. The record establishes that in the Arney Groups Project every alternative included a component that utilized uneven-aged management techniques. The Wilson Project and Terrapin Project also involved uneven-aged management. Thus, plaintiffs are not entitled to relief on this claim.

█ Finally, with respect to plaintiffs' third argument, the Court finds that the alternatives plaintiffs suggest that defendants consider to be inconsistent with the purpose of the proposed actions. Plaintiffs argue that the Forest Service should have considered alternatives that reduce road density and a roadless preservation alternative. These two alternatives would not meet the purpose and need for the proposed action to provide wood and fiber, including a non-declining sustained yield of forest products, nor would they contribute to attaining the Desired Future Condition in the Forest Plan. The Forest Service is not required to consider alternatives that do not achieve the purpose of the proposed action. Accordingly, plaintiffs are not entitled to relief on this claim.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant defendants' motion for summary judgment. An order consistent with this memorandum opinion shall enter this day. The Clerk of Court is directed to send certified copies of this memorandum opinion and accompanying order to counsel of record for the parties.

### FINAL ORDER

For the reasons stated in the accompanying memorandum opinion, it is **ADJUDGED AND ORDERED** that defendants' motion for summary judgment is **GRANTED.** Plaintiffs' motion for summary judgment is accordingly **DENIED.**

The Clerk of Court is directed to strike this case from the active docket of the Court and to send certified copies of this order and the accompanying memorandum opinion to counsel of record for the parties.