UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 98-2552
(CA-98-388-R)

Shenandoah Ecosystems Defense Group, et al,

Plaintiffs - Appellants,

versus

United States Forest Service, et al,

Defendants - Appellees.

O R D E R

The court amends its opinion filed September 24, 1999, as follows:

On page 2, line 1 of text: the opinion is corrected to begin "PER CURIAM."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SHENANDOAH ECOSYSTEMS DEFENSE
GROUP; HEARTWOOD; PRESERVE
APPALACHIAN WILDERNESS; SHERMAN
BANFORD; STEVEN KRICHBAUM;
CHRISTINA WULF; WILDERNESS
SOCIETY,
Plaintiffs-Appellants,

v.                                                          No. 98-2552

UNITED STATES FOREST SERVICE;
ELIZABETH ESTILL, Regional Forester;
WILLIAM DAMON, Forest Supervisor;
PATRICIA EGAN, District Ranger,
Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CA-98-388-R)

Submitted: August 20, 1999

Decided: September 24, 1999

Before ERVIN,* TRAXLER, and KING, Circuit Judges.

_____

* The opinion in this case was prepared by Judge Ervin, who died
before it was filed. The remaining members of the panel continue to con-
cur in what Judge Ervin wrote. The opinion is accordingly filed by a quo-
rum of the panel pursuant to 28 U.S.C. § 46(d).

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Matt Pethybridge, Blacksburg, Virginia, for Appellants. Lois J. Schiffer, Assistant Attorney General, Ann Peterson, John L. Smeltzer, Environment & Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Steven Bott, Ronald Mulach, UNITED STATES DEPARTMENT OF AGRICULTURE, Washington, D.C., for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Shenandoah Ecosystems Defense Group, joined by other environmental organizations and individuals (collectively "SEDG"), filed suit challenging the procedural adequacy of the timber harvesting decisions of the United States Forest Service ("Forest Service") in three areas within the Glenwood Ranger District of Jefferson National Forest in Virginia. Alleging that the Forest Service did not consider site-specific data or the cumulative impacts of the proposed logging as required by law, SEDG sought to enjoin the timber sales. The district court granted summary judgment in favor of the Forest Service. SEDG now appeals the district court's order, arguing that the Forest Service's failure to (1) consider the three projects' cumulative impacts; (2) address impacts to rare species in the area; and (3) discuss an adequate range of alternatives; violated the National Environmental Protection Act ("NEPA"), 42 U.S.C.A. §§ 4321-4347 (West 1994 & Supp. 1999), and the National Forest Management Act ("NFMA"), 16 U.S.C.A. § 1600-1614 (West 1985 & Supp. 1999).

2

Finding no evidence that the Forest Service's decision to approve the timber sales was arbitrary or capricious, we affirm.

I.

SEDG's challenge centers around three proposed Forest Service timber sales in the Jefferson National Forest ("JNF"). Federal regulations require that the Forest Service manage the forest units according to the Forest's Land and Resource Management Plan ("Forest Plan") by providing for "multiple use and sustained yield of . . . [forest] products and services." 16 U.S.C.A. § 1604(e)(1). As part of that management responsibility, the Forest Service may engage in timber sales, as long as they are consistent with the requirements of the Forest Plan. See 16 U.S.C.A. § 1604(i). The Forest Service proposed three such timber sales within the JNF: the Arney Groups Project, the Terrapin Mountain Project, and the Wilson Mountain Project.

The Arney Groups Project covers over 15,000 acres, 224 acres of which was to be sold for logging. The Wilson Mountain Project covers approximately 5,750 acres, 196 acres of which was to be sold for logging. The Terrapin Mountain Project covers around 3,513 acres, 110 acres of which was to be sold for logging. In total, these three sales involved the logging of 530 acres of National Forest land. The Forest Service engaged in the sales for the stated purposes of harvesting wood fiber while improving the health and vigor of the trees within the affected areas, and providing a sustained yield of forest products within the limits of the Forest Plan.

The Forest Service prepared an Environmental Assessment ("EA") for each of the proposed sales. Each EA contained an assessment of the impacts of the projects, as well as consideration of possible alternatives to the actions proposed. The EAs for each of the sales within the JNF was submitted to the District Ranger for approval. After several rounds of public comment and input, the District Ranger found that each project was consistent with the Forest Plan, provided benefits to both society and the long-term health of the forest, and would have no significant environmental impacts. The District Ranger issued separate decision notices approving the three timber sales.

SEDG timely appealed the District Ranger's decisions to the Regional Forester. With respect to the Wilson Mountain and the Ter-

3

rapin Mountain projects, the Regional Forester rejected SEDG's arguments on appeal and affirmed the District Ranger's decision to proceed. This was the final administrative action on these two projects. With respect to the Arney Groups Project, the Regional Forester remanded the case to the District Ranger with instructions to correct the inadequate environmental effects disclosure on the Peaks of Otter Salamander, the coal skunk, and the Indian bat -- all species found in the proposed logging areas. A revised EA was prepared and approved by the District Ranger on September 24, 1997. This was the final administrative action for the Arney Groups Project. At this point, SEDG had exhausted all of its administrative remedies. With no other recourse, SEDG filed the instant action in district court.

The parties agreed to submit the case to the court on the administrative record, and filed cross-motions for summary judgment. In its opinion the district court granted summary judgment in favor of the Forest Service, finding that the Forest Service adequately considered the projects' cumulative impacts and properly complied with all applicable regulatory requirements. See Shenandoah Ecosystems Defense Group v. United States Forest Service, 24 F. Supp. 2d 585, 589-93 (W.D. Va. 1998). SEDG appeals the district court's ruling.[1] The parties agreed to forego oral argument before this Court and submitted this case for decision on the briefs.

II.

On appeal, SEDG argues that the Forest Service violated NEPA and NFMA by failing to properly consider (1) the cumulative impacts of the three sales on key forest resources, (2) the impact of the proposed logging on the Peaks of Otter Salamander, and (3) an adequate range of alternatives to the timber sales. In addition, SEDG contends that the Forest Service violated NEPA by failing to prepare an environmental impact statement ("EIS").

_____

[1] Stating that it had no jurisdiction over the claim because it was not a final agency action, the district court refused to consider SEDG's argument that the Forest Service failed to include certain parts of the projects in its "roadless" inventory. See Shenandoah, 24 F. Supp.2d at 591-92. SEDG did not appeal this portion of the district court's ruling.

4

Our review of the Forest Service's decision is narrow. See <u>Hughes River Watershed Conservancy v. Johnson</u>, 165 F.3d 283, 287 (4th Cir. 1999) ("<u>HRWC II</u>"). Although we give the district court's judgment on this agency decision no deference, <u>see Hughes River Watershed Conservancy v. Glickman</u>, 81 F.3d 437, 443 (4th Cir. 1996) ("<u>HRWC I</u>"), we will reverse the agency's decision only if it was arbitrary and capricious or otherwise not in accordance with the law. <u>See</u> 5 U.S.C.A. § 706(2)(A) (West 1996). In reviewing similar decisions, we have found agency decisions arbitrary and capricious only "if the agency relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." <u>HRWC II</u>, 165 F.3d at 287-88.

A.

SEDG first argues that, although the Forest Service considered the environmental impacts each of the three timber projects would have on the JNF individually, it failed to consider whether their combined, cumulative impacts was a violation of NEPA. More specifically, SEDG asserts that because none of the EAs associated with the three timber projects referenced the other proposed projects, and none of the EAs discussed the cumulative impacts on the shared James River Watershed, the Forest Service has failed to properly analyze the cumulative environmental impact of these projects on the JNF resources as a whole.

NEPA requires the Forest Service to consider the cumulative impact on the environment of related federal actions. <u>See</u> 40 C.F.R. § 1508.25(c) (1998). <u>See also Kleppe v. Sierra Club</u>, 427 U.S. 390, 410 (1976) (holding that actions that "will have[a] cumulative or synergistic environmental impact upon a region . . . must be considered together."). Cumulative impacts are the impacts on the environment which result from the incremental impact of an action when added to other past, present, and reasonably foreseeable future actions. <u>See</u> 40 C.F.R. § 1508.7 (1998).

The determination of when cumulative impacts should be considered in a separate document requires the weighing of several factors,

5

including the degree of interrelationship between the proposed actions and practical feasibility. See Kleppe, 427 U.S. at 412. As noted by the Supreme Court, "[r]esolving these issues requires a high level of technical expertise and is properly left to the informed discretion of the responsible federal agencies." Id. Without proof of arbitrary action, we must assume that the agency properly exercised its discretion. See id.

In its opinion, the district court found that the Forest Service had properly considered the cumulative impacts of the logging projects. Specifically, the court found evidence that the Forest Service had taken the requisite hard look at the cumulative impacts examining the direct and indirect environmental effects of each alternative to the proposed action, analyzing separately each of the resources effected by the harvest, and studying the project's impacts on organisms and native wildlife. See Shenandoah, 24 F. Supp.2d at 590. The court denied SEDG relief on this claim.

On appeal, SEDG contests this ruling, but directs its criticism almost exclusively to the Forest Service's failure to provide sufficient information on the cumulative impacts to the visual and recreational resources of the Appalachian Trail and the Blue Ridge Parkway. After reviewing the voluminous record on the three proposed timber sales, we find that the Forest Service did not arbitrarily fail to consider the cumulative impacts of these projects.

The administrative record evidences that the Forest Service addressed several potential environmental impacts in the EA of each project, one of which was the impact to surrounding visual and recreational resources. After examining this factor and finding that none of the projects impacted identical visual or recreational resources, the Forest Service reasonably concluded that a separate cumulative impacts study was unnecessary. There is no evidence in the record that this analysis was arbitrary or capricious. On the contrary, the visual resources impacted are listed in each EA and, upon review, each appears to impact distinct resources. There is no indication that they overlap to produce substantial cumulative impacts to the Appalachian Trail or the Blue Ridge Parkway. In addition, the EAs evidence that the Forest Service considered in detail the aggregate impact of

6

past and future timber harvests with specific mention of impacts from past acreage harvested and projected future harvesting.

The record shows that the Forest Service carefully considered the cumulative impact each of these projects would have on the surrounding visual and recreational resources. SEDG does not contest the method by which the agency came to its conclusion, but merely asserts that the Forest Service's failure to include a separate analysis of cumulative impacts violates NEPA. NEPA does not explicitly require a separate analysis, and because we believe that the Forest Service properly considered these effects within each individual EA, we find no evidence that the Forest Service acted arbitrarily. We affirm the district court's denial of relief on this claim.[2]

B.

Second, SEDG argues that, because the site of the Terrapin Mountain project is within the range of the Peaks of Otter Salamander ("POS"), the proposed logging will impact this sensitive species. On that ground, SEDG insists that the Forest Service acted arbitrarily and capriciously in approving the Terrapin Mountain project because it lacked sufficient population data to confirm the actual range of POS habitat.

_____

[2] Relying on Neighbors of Cuddy Mountain v. United States Forest Service, 137 F.3d 1372 (9th Cir. 1998), and Curry v. United States Forest Service, 988 F. Supp. 541 (W.D. Pa. 1997), SEDG also argues that the Forest Service's failure to specifically refer to the other two projects in each of the three EAs was exemplary of its failure to consider cumulative impacts properly. Neither of these cases supports SEDG's argument. Cuddy and Curry simply suggest that the EAs must provide some quantifying and detailed information and that general statements are not enough. See generally Cuddy, 137 F.3d at 1379; Curry, 988 F. Supp. at 553 n.17. Instead of advancing the idea that cross-referencing projects within other EAs is a pre-requisite to NEPA compliance, Cuddy and Curry require a case-by-case analysis by which courts should determine whether the Forest Service properly addressed overall cumulative impacts. Because we find that the Forest Service provided sufficient cumulative impacts analysis within each EA, we reject this argument.

7

Under the NFMA, the Forest Service is required to include site-specific Biological Evaluations as part of each project EA. Specifically, according to the Forest Plan:

> A biological evaluation of how a project may affect any species federally listed as threatened, endangered, or proposed, or identified by the Forest Service as sensitive [collectively referred to as "PETS" species], is done as part of the site-specific environmental analysis. This evaluation considers all available inventories of threatened, endangered, proposed and sensitive species populations and their habitat for the proposed treatment area. When adequate population inventory information is unavailable, it must be collected when the site has high potential for occupancy by a [PETS] species.

Sierra Club v. Martin, 168 F.3d 1, 3 (11th Cir. 1999) (citation omitted). Relying on available POS population inventory data, the Forest Service prepared a Biological Evaluation as part of each project EA. Based on the results of the Biological Evaluations, the Forest Service determined that the proposed projects did not have a high potential of coinciding with POS habitat. There is no dispute, therefore, over whether the Forest Service prepared the required Biological Evaluation, but rather whether the agency retained adequate data on which to base its determination regarding the POS habitat. After reviewing the record, we find that the Forest Service relied on ample POS population data in approving the three timber sales.

The record shows that among other sources, the Forest Service relied on POS population data collected in field studies completed as part of a larger POS conservation plan. In 1990, the Virginia Division of Natural Heritage conducted a POS population study for the Forest Service. The explicit purpose of the study was to define the range and distribution of the POS. The Forest Service used the resulting data to map potential POS habitat, which was divided into primary and secondary habitat conservation areas.

As part of its efforts to protect the POS, the Forest Service joined the National Parks Service and the Fish and Wildlife Service in a Habitat Conservation Agreement ("HCA"). The maps of the potential

8

habitat range of the POS that formed the basis of the HCA were created from the aforementioned studies. Under the HCA, all commercial timber harvesting was prohibited in the primary conservation areas, while all methods of timber harvesting, except clear cutting, were approved in the secondary conservation area. In evaluating the potential effects of the proposed sales on the POS, the Forest Service compared the HCA data with the areas of the proposed timber projects, and when the areas did not overlap, the Forest Service reasonably found that the timber projects would not have a significant impact on POS habitat.

SEDG argues that the Forest Service should not have been allowed to rely on this general POS data for its findings, but should have conducted additional population inventory surveys specifically for these projects. We cannot agree.

The relevant NFMA regulations require only that the Forest Service make these determinations based on all available data. Only if adequate data is unavailable, and there is a high likelihood that the sensitive species occupies the proposed project area, is the Forest Service required to obtain new site-specific population data.

The record supports the Forest Service's contention that its Biological Evaluation was based on reliable, adequate, and detailed population data from all available POS field surveys. The agency relied on data collected in 1990 by the unaffiliated Virginia Division of Natural Heritage, as well as data collected and retained by the Glenwood Ranger District and its own field surveys. These studies were designed with the specific purpose of determining the range and density of the POS habitat. The Forest Service also relied on the collective expertise of the signatories to the HCA, which provided guidelines by which timber harvesting could occur while still protecting the POS. We find, therefore, that the Forest Service relied on adequate population inventories in making its determinations with respect to the POS.

In Kirchbaum v. Forest Service, we affirmed a lower court ruling stating that "[t]he Forest Service is not required to maintain inventories and data to [the plaintiff's] satisfaction, but only as necessary to make the decisions committed to its discretion." 973 F. Supp. 585,

9

592 (W.D. Va. 1997), aff'd, 139 F.3d 890 (4th Cir. 1998) (table). After reviewing the record, we hold that the data on which the Forest Service relied in making its highly discretionary decisions regarding POS habitat were sufficient. Finding no error, we affirm the district court's ruling denying relief on this claim.

C.

SEDG also alleges that the Forest Service violated NEPA by failing to consider a sufficiently broad range of alternatives to the proposed projects in the EAs. Specifically, SEDG contends that the Forest Service acted arbitrarily by not considering (1) alternatives including "real forms" of uneven-aged management, (2) alternatives involving natural regeneration, and (3) SEDG's proposed alternative protecting "de facto" roadless areas.

NEPA requires the Forest Service to include a detailed statement describing appropriate alternatives to any proposed federal action. See 42 U.S.C.A. §§ 4332(2)(C)(iii), (E) (West 1994). "Section 4332 does not require the consideration of alternatives whose effect cannot be reasonably ascertained, and whose implementation is deemed remote and speculative," Headwaters, Inc. v. Bureau of Land Management, Medford Dist., 914 F.2d 1174, 1180 (9th Cir. 1990) (citation omitted); the Forest Service need not consider every possible alternative, only those that are reasonable. See 40 C.F.R.§ 1502.14(c) (1998).

After reviewing the record, we find that the Forest Service presented and considered an adequate range of alternatives to comply with its requirements under NEPA. Each of the three EAs included a detailed discussion of five possible alternatives. In each case, the Forest Service ascertained the Desired Future Condition of the three areas, considered public input in developing the possible alternatives, and discussed mitigation and no-action alternatives.

SEDG asserts that the alternatives included in the EAs were inadequate because none employed uneven-aged management techniques. As noted by the district court, the record shows otherwise. Each of the alternatives suggested in the Arney Group EA included an evaluation of the use of uneven-aged management. In the Wilson and Terrapin project EAs, uneven-aged management was addressed within the list

10

of proposed alternatives. We find that the Forest Service gave adequate and appropriate consideration to the use of uneven-aged management techniques within its evaluation of potential alternatives.

SEDG also alleges that the alternatives in the EAs were incomplete because none involved natural regeneration and succession of the forests. SEDG failed to define or suggest what type of alternatives would have satisfied this criterion or how this option differed from the no-action alternative discussed explicitly in each EA. Assuming as we must that natural regeneration is an equivalent alternative to no-action, we find that the Forest Service properly considered this option in its discussion of proposed alternatives.

Finally, SEDG argues that the Forest Service arbitrarily declined to accept SEDG's proposed alternative protecting "de facto" roadless areas. The record shows that the areas surrounding the timber projects, those which SEDG refers to as roadless, were actually inventoried by the Forest Service and found not to qualify for designation as roadless areas; without this designation, the Forest Service was not required to take the roadless quality of these areas into account when devising alternatives.

Even if SEDG's proposed alternative would have kept a "de facto" roadless area undisturbed, the Forest Service was not required to accept or discuss it. As noted by the Fifth Circuit in Sierra Club v. Espy, "it makes little sense to fault an agency for failing to consider more environmentally sound alternatives to a project which it has properly determined . . . will have no significant environmental effects anyway." 38 F.3d 792, 803 (5th Cir. 1994) (citation omitted).

Given that each EA evidences thorough consideration of five alternatives for each of the projects, we find that the Forest Service considered a sufficiently broad range of alternatives and thereby complied with its duties under NEPA.

III.

Finally, SEDG claims that the Forest Service acted arbitrarily and capriciously by preparing only an EA and not an EIS. SEDG asserts

11

that there were substantial questions about whether the three timber sales would have a significant impact on the human environment and therefore, the Forest Service was required to prepare an EIS.

SEDG correctly states that the significance of the environmental impacts of a proposed action is what governs whether an agency must prepare an EA or an EIS. See generally 40 C.F.R. §§ 1501.3, 1501.4, 1502.1. An agency must prepare an EA in order to determine whether an EIS is necessary, however. See § 1508.9(a)(1). If, after preparing an EA, the agency determines that no significant impact will result, no EIS need be prepared. See § 1508.13.

To successfully challenge an agency determination not to prepare an EIS, a plaintiff must raise substantial questions as to whether the project may cause significant degradation of the environment. See Idaho Sporting Congress v. Thomas, 137 F.3d 1146, 1149-50 (9th Cir. 1997). As long as the record shows that the regulating agency took a hard look at the potential environmental consequences of the proposed action, the agency cannot be said to have acted arbitrarily and capriciously. See Baltimore Gas & Elec. Co. v. National Resources Defense Counsel, Inc., 462 U.S. 87, 97-98 (1983). An agency's determination that a project will not significantly impact the environment is entitled to substantial deference. See Sabine River Auth. v. United States Department of Interior, 951 F.2d 669, 678 (5th Cir. 1992).

We find that the Forest Service took great pains to address the potential environmental impacts of the proposed actions in each of the three EAs and reasonably found that they were not sufficiently significant to warrant an EIS. The Forest Service evaluated the significance of each project's impact using the statutory factors outlined in the governing regulations, after which it included internal cross-references directing the reader to other locations within the EA where each impact was discussed in greater detail. Having reviewed each of these sections and the associated analysis, we cannot agree that the agency acted arbitrarily in determining that the environmental impacts of the proposed projects did not require preparation of an EIS.

SEDG also argues that the very length of the EAs prepared for these three timber projects proves that their environmental impacts

12

will be significant; SEDG essentially insists that if there was enough information to write a 100-page EA, then surely an EIS was warranted. We find this argument to be meritless. As argued persuasively by the Forest Service, we find that the EAs were so long because they were prepared in strict accordance with the lengthy applicable regulations. See 40 C.F.R. § 1508.9. Given these statutory requirements, it would have been hard for the Forest Service to be concise while still giving proper consideration to all required factors and providing detailed answers to all required questions. See Sierra Club v. Forest Service, 46 F.3d 835, 840 (8th Cir. 1995). Although the Forest Service's EAs exceeded the requisite target length, we find that this did not undermine the strength of the agency's determination that the environmental impacts of the timber sales would not be so significant as to require an EIS.

Finding no evidence that the Forest Service acted in an arbitrary or capricious manner in deciding not to prepare an EIS, we hold that SEDG is not entitled to relief on this claim.

IV.

For the foregoing reasons, we hold that the district court properly granted summary judgment in favor of the Forest Service. The district court's judgment is therefore

AFFIRMED.

13